951 F.2d 348
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jack M. DARNELL, Plaintiff-Appellant,
v.
JONES MOTOR COMPANY, INC., Defendant-Appellee.
 No. 91-1030.
 United States Court of Appeals, Sixth Circuit.
 Dec. 19, 1991.
 
 Before RYAN, Circuit Judge, WELLFORD, Senior Circuit Judge, and HIGGINS, Disrtrict Judge.*
 PER CURIAM.
 
 
 1
 An appeal in this case comes before us a second time following a previous remand to the district court for an articulation of "the factual, legal and discretionary issues presented as demanded" in Patton v. Aerojet Ordnance Co., 765 F.2d 604 (6th Cir.1985). The issues involve contract interpretation, and the district court has entered summary judgment for defendant Jones Motor Company, Inc. (Jones). Plaintiff Jack M. Darnell (Darnell) contends that Jones violated the contract terms, an oral modification or clarification, and an implied understanding. We shall AFFIRM.
 
 
 2
 During the early 1980s, Darnell hired drivers for trucks he had purchased and then leased to Jones which provided shipping services. By 1987, Darnell had purchased seven or eight tractors and a number of trailers which it leased to Jones. Jones leased each piece of equipment individually using one of two form documents. The first, known as the "union lease," contained an integration clause and the following termination clause:
 
 
 3
 This Lease shall commence on the effective date specified below and shall continue in effect until breached by either party or terminated in accordance with the provisions of this paragraph. Either party shall have the right to terminate this Lease at any time after thirty (30) days from the effective date hereof by mailing or delivering to the other party at the address listed below, two copies of a written notice of termination. Termination shall be effective either upon receipt of notice of termination from the other party or upon such later date as may be specified in the notice.
 
 
 4
 The second, or "non-union lease," stated it was to be construed under Pennsylvania law and provided the following termination clause:
 
 
 5
 The agreement will be in effect for a period of at least thirty (30) days and will continue in effect thereafter, except:
 
 
 6
 ....
 
 
 7
 (ii) That this AGREEMENT may be terminated by either party hereto at any time after thirty (30) days for any reason upon written notice by registered mail given by the party terminating the agreement....
 
 
 8
 On May 13, 1987, Jones Motors' vice president of operations, Richard Foor, wrote to Darnell projecting that Darnell might receive a bonus of just over $12,000 based on a safety and productivity program under the non-union lease. Foor expressed pleasure with Darnell's performance of the agreement, stating that he looked forward to "a long and satisfying relationship" with Darnell. The bonus program required that Darnell "be actively engaged as a lessor ... on the September 15th following the expiration of the fiscal year which is the day that the award is paid." Darnell never received any bonus because Jones terminated the lease before that date.
 
 
 9
 On June 5, 1987, Darnell and Jones executed Lease No. 9121, the last lease between the two parties before Jones announced termination effective July 3, 1987. The equipment from Lease No. 9121 was on the road on July 3 and the parties agreed to allow for a July 6 return date.[1]
 
 
 10
 Darnell filed suit alleging that the written leases had been breached, that Jones had gone back on oral assurances or that a combination of oral assurances and the circumstances of these leases, including the incentive program, implied a contract of indefinite term. Jones denied any breach or any liability to Darnell. The district court granted summary judgment to Jones except as to Lease No. 9121, but the dispute as to that lease was withdrawn from our consideration since it was dismissed with prejudice. The district court specifically rejected Darnell's argument that Foor's statement was a modification finding that it was instead a statement only of present intent. The district court also found no modification occurred when Jones' agent urged Darnell to buy and lease more equipment because each time he signed a new lease it contained a termination clause as indicated.
 
 
 11
 We review the grant of summary judgment under a de novo standard. McKee v. Cutter Laboratories, Inc., 866 F.2d 219, 220 (6th Cir.1989). Federal Rule of Civil Procedure 56(c) governs the granting of summary judgments and provides:
 
 
 12
 The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
 
 
 13
 We must view the evidence in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). There is an issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence brought by the nonmoving party need not be "in a form that would be admissible at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing summary judgment must make a sufficient showing to establish each of the essential elements of its case on which it will bear the burden of proof at trial. Id.
 
 
 14
 Under Pennsylvania law, which governs the non-union contract by its terms, and under Michigan law, where some of the other contracts were apparently executed, the meaning of unambiguous contracts is a matter of law. See Brokers Title Co., Inc. v. St. Paul Fire & Marine Ins. Co., 610 F.2d 1174 (3d Cir.1979); Moore v. Campbell, Wyant & Cannon Foundry, 142 Mich.App. 363, 369 N.W.2d 904 (1985); Michigan Chandelier Co. v. Morse, 297 Mich. 41, 49, 297 N.W. 64 (1941); Vogel v. Berkley, 354 Pa.Super. 291, 511 A.2d 878 (1986).
 
 
 15
 We find that the contracts are clear and unambiguous. Lease No. 9121 is not at issue because those matters were dismissed. See Fed.R.Civ.P. 41(a)(2) (voluntary dismissal by order of court); Wright & Miller, Federal Practice and Procedure Civil § 2367 (voluntary dismissal with prejudice is subject to rules of res judicata).
 
 
 16
 Even if the parties could point to some ambiguity in the words of this contract, summary judgment would be appropriate. Darnell has been in business for 17 years and is familiar with the industry's standard, which contains a thirty-day lease termination clause. He had cancelled leases himself in reliance on a similar termination clause. Such action amounts to Darnell's admission of his understanding of the contract term, which coincides with that of his adversary, and with the usage of the trucking trade. We construe unambiguous agreements in accordance with trade practices. See UCC § 1-205(4).
 
 I. ORAL AMENDMENT
 
 17
 Darnell argues that Cecil Brown, Jones' agent, encouraged Darnell to purchase more trucks leading him to believe the leases would continue until Darnell had time to cover his outlays, and that Foor had modified the contract by his letter of encouragement. The district court found that Foor's statements were merely a matter of present intent. Foor intended at that time not to exercise his right to terminate under the contract. The court found Brown's statements occurred prior to each lease and were superseded by the lease itself in which Darnell specifically agreed to a thirty days termination provision.
 
 
 18
 Brown's statements could be admitted as extrinsic evidence of the meaning of the agreement only if its terms were ambiguous. Darnell has admitted in his deposition that they are not. "A party may not create a genuine issue of fact by contradicting his own earlier statements, at least without a plausible explanation for the sudden change of heart." Richardson v. Bonds, 860 F.2d 1427, 1433 (7th Cir.1988). "It is well established that a party cannot create a genuine issue of fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony." Diliberti v. United States, 817 F.2d 1259, 1263 (7th Cir.1987). Although Darnell may have been misled by Brown's statements, he cannot claim that those statements induced him to disregard the meaning of a term in a form contract that he had used for some seventeen years. Thus, this parole evidence was properly excluded as inconsistent with the clear written agreement. See, e.g., U.C.C. § 2-202; Vergoe v. K Mart Corp., 158 Mich.App. 96, 404 N.W.2d 711, 716 (1987); Central Transp., Inc. v. Freuhauf Corp., 139 Mich.App. 536, 362 N.W.2d 823, 827 (1984); Sokoloff v. Strick, 404 Pa. 343, 172 A.2d 302 (1961). Parole evidence may be useful in unusual cases to show that the written contract does not contain the complete agreement of the parties, but resort to an alleged verbal statement is especially weak in the face of the union contract's integration clause and given the standard nature of these leases in the industry.
 
 
 19
 The district court found that Foor's statements did not modify the leases.[2] The district court's conclusion that no rational factfinder could interpret Foor's statements as anything other than present intent is not erroneous. Those statements, if made, indicate only that Foor was then happy with Darnell's performance, not that he intended to alter the legal relation between them. There were no words signifying an intent to change the contract which, indeed, is not even mentioned in Foor's letter. Thus, even if the union contract were not integrated,[3] we find that summary judgment was appropriate on both contracts.
 
 II. IMPLIED CONTRACT
 
 20
 Darnell argues that Jones created an implied contract that it would not exercise its termination rights when it set up the safety and productivity bonus program in the non-union leases. As Jones notes, however, this program is a part of the written lease and other terms in that lease govern termination. In Johnson v. Michigan Mut., Ins. Co., 183 Mich.App. 277, 280, 454 N.W.2d 128, 130 (1989), the Michigan Court of Appeals stated:
 
 
 21
 [w]here an express contract is in force, a contract covering the same subject matter cannot be implied in law. Hickman v. General Motors Corp., 177 Mich.App. 246, 251, 441 N.W.2d 430 (1989).
 
 
 22
 See also Gee v. Eberle, 279 Pa.Super. 101, 119, 420 A.2d 1050, 1060 (1980).
 
 
 23
 While Darnell does not raise the issue of fraud in his complaint or brief, he cites Universal Builders, Inc. v. Moon Motor Lodge, Inc., 430 Pa. 550, 559, 244 A.2d 10, 16 (1968), in which the Pennsylvania Supreme Court stated that "[o]bviously a condition is considered waived when its enforcement would result in something approaching fraud." Darnell had accrued $7,252.62 worth of bonus by March 31, 1987, and was expected to earn over $12,000 in bonus by June 30, 1987. Darnell complains that he was never paid any bonus money. The contract clearly provided, however, that a condition to receipt of a bonus was that the lease be in effect "on the September 15th following the expiration of the fiscal year which is the day that the award is paid."
 
 
 24
 The record does not clearly show why Jones terminated the leases. We do not undertake consideration of a fraud claim by implication under these circumstances. This issue does not appear to have been presented to the district court clearly and unequivocally, in any event
 
 
 25
 We AFFIRM the decision of the district court, accordingly.
 
 
 
 *
 THE HONORABLE THOMAS A. HIGGINS, United States District Court for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 July 6 is thirty-one days after the inception of Lease No. 9121
 
 
 [2]
 Darnell understood he would work with Jones as long as Foor was Jones' vice president
 
 
 [3]
 Darnell cites Pennsylvania cases that appear to render integration clauses of little effect under that state's law. Darnell's Brief at 6